**Opinion issued December 19, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00214-CV

_____

**HARRIS COUNTY, TEXAS, Appellant**

**V.**

**APRIL JONES, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-73839**

---

## MEMORANDUM OPINION

This interlocutory appeal arises from a motor-vehicle collision between appellee April Jones and a Harris County Sherriff's Office deputy employed by appellant Harris County, Texas (the "County"). On appeal, the County challenges the trial court's order denying its plea to the jurisdiction in a suit for negligence

brought against it by Jones. In its sole issue, the County contends that it retains its governmental immunity, and, thus, the trial court lacks subject-matter jurisdiction over the suit.

We reverse and render judgment dismissing Jones's claims against the County.

## Background

Jones alleges that in January 2022, she was driving her car onto the North Freeway. At the same time, Harris County Sheriff's Deputy C. Sutton was in his patrol car on the freeway pursuing a suspect in a stolen vehicle. Deputy Sutton had his emergency lights and siren activated. The suspect vehicle abruptly changed lanes and exited. Deputy Sutton maneuvered his patrol car toward the shoulder of the highway and across an on-ramp. When he did so, Jones, who was driving on the on-ramp toward the highway, struck Deputy Sutton's vehicle.

Jones sued Harris County, asserting that its employee, Deputy Sutton, was negligent in:

- "driving with willful and wanton disregard for person or property in his vicinity";
- "failing to timely apply the brakes to his vehicle in order to avoid the collision";

- "failing to keep a proper lookout for the traffic traveling in his vicinity";

- "failing to control his speed";

- "failing to slow his vehicle prior to crossing the freeway on-ramp in order to avoid the collision";

- "failing to stop his vehicle to avoid the collision by looking for oncoming vehicles";

- "driver inattention"; and

- "fail[ing] to act as a reasonable prudent person would or should under the same or similar circumstances."

Jones alleged that Deputy Sutton's negligence proximately caused her injuries.

The County filed a plea to the jurisdiction, arguing that it was entitled to governmental immunity because its employee, Deputy Sutton, was entitled to official immunity. In its plea, the County noted that the Texas Tort Claims Act ("TTCA") governs the waiver of immunity for tort suits against governmental units and provides only a limited waiver of immunity in certain narrowly defined circumstances. The Legislature has provided such limited waiver of immunity in suits against governmental entities for damages caused by an employee's negligent operation of a motor-driven vehicle if the employee would be personally liable under Texas Law. TEX. CIV. PRAC. & REM. CODE § 101.021(1). The County argued

3

that because Deputy Sutton was responding to an emergency at the time of the collision, so the TTCA's "Emergency Exception" applies and the County retains its immunity from suit. *Id.* §§ 101.055(2), .062(b). In support, the County attached the crash report, an affidavit from Deputy Sutton, Deputy Sutton's dash camera recording, and an expert report authored by former Houston Police Department Executive Assistant Chief of Police Michael Dirden.

Jones responded to the plea stating that the emergency exception does not apply because Deputy Sutton failed to slow down to look for oncoming traffic as he crossed over to the on-ramp. She stated that a concrete support column obstructed his view of oncoming traffic and that he did not pause before crossing from the freeway to the on-ramp. In support, she attached the crash report, dash camera footage, petition, plea to the jurisdiction, Deputy Sutton's affidavit, and the expert report produced by the County. The trial court denied the County's plea to the jurisdiction. The County appealed.

## Governmental Immunity

In its sole issue, the County argues that the trial court erred in denying its plea to the jurisdiction because the County conclusively established that the TTCA's "Emergency Exception" applied, and, thus, it retained its immunity.

## A.	Plea to the Jurisdiction

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction, which we review de novo. *Univ of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia ("Mission Consol. II")*, 372 S.W.3d 629, 635 (Tex. 2012). "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. In doing so, we "construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* at 226–27. But if the pleadings "affirmatively negate the existence of jurisdiction," then the court may grant the plea to the jurisdiction without giving the plaintiffs an opportunity to amend. *Id.* at 227.

A plea to the jurisdiction may also challenge the existence of jurisdictional facts or implicate the merits of the plaintiff's cause of action. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must "consider relevant evidence submitted by the parties" as necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227. A trial court's review of a plea to the jurisdiction that challenges jurisdictional facts "mirrors that of a traditional summary judgment motion." *Mission Consol. II*, 372 S.W.3d at 635. Initially, a plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction, which includes the burden of establishing a waiver of a governmental entity's immunity from suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The defendant challenging jurisdiction then "carries the burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction." *Mission Consol. II*, 372 S.W.3d at 635. If the defendant meets this burden, then, as in summary-judgment practice, the burden shifts to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* If the defendant fails to carry his burden or a fact issue exists, the trial court should deny the plea. *See id.* But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

**B.    Governmental Immunity**

Governmental immunity, like sovereign immunity from which it is derived, exists to protect political subdivisions, such as cities, from suit and liability for monetary damages. *Mission Consol. Indep. Sch. Dist. v. Garcia (Mission Consol. I)*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008). Governmental immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the State's political subdivisions have been sued unless immunity is waived by the Legislature. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 392 (Tex. 2022). "We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous." *See Mission Consol. I*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE § 311.034).

Here, neither party disputes that Harris County is a governmental unit. The parties do not dispute that Deputy Sutton is an employee of the County who was operating a county-owned vehicle at the time of the car crash. The question becomes whether Jones's claims fall within the emergency exception to the TTCA. TEX. CIV. PRAC. & REM. CODE § 101.055(2). The TTCA waives immunity for the negligent acts of government employees in specific situations. *Id.* at § 101.021. But there are several exceptions, including for emergency situations. *Id.* at § 101.055. The emergency exception provides that the TTCA waiver provisions do not apply to claims

7

arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.* § 101.055(2). Jones does not dispute that Deputy Sutton was responding to an "emergency situation." Therefore, the TTCA "does not apply" and the County retains immunity if Jones failed to raise a fact issue that either (1) Deputy Sutton's pursuit violated the laws and ordinances applicable to emergency action or (2) the pursuit was reckless. TEX. CIV. PRAC. & REM. CODE § 101.055(2).

Jones asserts that Deputy Sutton violated Texas Transportation Code section 546.005, which states that a driver of an emergency vehicle must drive "with appropriate regard for the safety of all persons" and is not relieved of "the consequences of reckless disregard for the safety of others." TEX. TRANSP. CODE § 546.005. Therefore, the ultimate issue in this appeal is whether Jones presented the trial court with evidence creating a genuine issue of material fact as to whether Deputy Sutton acted recklessly. *See City of Houston v. Green*, 672 S.W.3d 27, 29 (Tex. 2023) (stating that because both Transportation Code section 546.005 and Civil Practice and Remedies Code section 101.055(2) require "reckless disregard" for the safety of others, the question collapses to single inquiry whether officer acted recklessly).

**C.     Analysis**

Jones argues that a fact issue exists as to whether Deputy Sutton acted recklessly because Deputy Sutton crossed over the freeway on-ramp with an obstructed view and failed to slow down immediately before crossing the freeway on-ramp.

Driving with reckless disregard involves more than a "momentary judgment lapse." *Green*, 672 S.W.3d at 30 (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 531 (Tex. 2022)). It requires a "willful or wanton disregard for the safety or person or property," exhibiting "conscious indifference" while having "subjective awareness of an extreme risk." *Maspero*, 640 S.W.3d at 531 (first quoting TEX. TRANSP. CODE § 545.401(a); and then quoting *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019)). To drive with reckless disregard, the driver must commit "an act he knew or should have known posed a high degree of risk of serious injury" to others. *Green*, 672 S.W.3d at 30 (internal citations omitted).

Jones does not dispute that Deputy Sutton was responding to an emergency call attempting to stop a vehicle that had been carjacked, occupied by multiple suspects who had committed felonies in the area. Deputy Sutton had his emergency lights and siren activated during the entirety of the incident, including following the suspect vehicle, maneuvering toward the on-ramp, and after the collision with

9

Jones. He averred that he switched lanes to attempt to maintain sight of the vehicle and to give coordinates to other law enforcement units participating in the chase.

The video of the incident shows Deputy Sutton speeding in pursuit of the suspect vehicle. At the beginning of the video, the deputy's vehicle is driving 100 miles per hour. The stolen vehicle quickly crosses three lanes of traffic as it attempts to evade law enforcement. While Deputy Sutton maneuvers across the right lanes of the freeway, he reduces his speed multiple times in response to cars around him. First, he reduces his speed to around 60 miles per hour as he changes lanes. He briefly increases his speed to as high as 80 miles per hour as he drives straight in the unoccupied right lane. Immediately before he crosses onto the on-ramp, as he passes the concrete support pillar, Deputy Sutton is driving about 40 miles per hour. He continues to slow down, and his speed is about 30 miles per hour and decreasing at the time of the collision.

Considering all uncontroverted evidence while accepting all disputed facts in Jones's favor, the record does not support a finding that Deputy Sutton acted with conscious indifference to others and subjective awareness of an extreme risk. *Maspero*, 640 S.W.3d at 531. The record reflects that, while his lights and siren were activated, Deputy Sutton responded to conditions of the road and vehicular traffic around him by reducing his speed and changing lanes. He also maintained communication with other law enforcement vehicles and air support. *See Maspero*,

10

640 S.W.3d at 532 (holding no reckless disregard when officer slowed at intersections and communicated with sergeant during chase).

Jones claims that Deputy Sutton could not see her vehicle immediately before the collision because a concrete support pillar blocked his view. She also argues that Deputy Sutton failed to reduce his speed immediately before the crash. Even accepting these disputed facts as true, as we must, they do not support a conclusion that Deputy Sutton acted recklessly. *Miranda*, 133 S.W.3d at 226. At best, they may support a conclusion that Deputy Sutton suffered a "momentary lapse of judgment." *Green*, 672 S.W.3d at 31 (stating officer's failure to activate siren when crossing road without stopping was momentary lapse of judgment). A momentary lapse of judgment is a failure to exercise due care at a particular point, and it does not create a factual dispute as to an overall reckless disregard for safety of others. *Id.*

Jones argues that there is a genuine issue of material fact as to whether Deputy Sutton acted with reckless disregard as he approached the on-ramp, did not pause, and proceeded across the on-ramp with an obstructed view. Jones cites to our opinion in *Rivera v. City of Houston*, No. 01-19-00629-CV, 2022 WL 2163025, at *11 (Tex. App.—Houston [1st Dist.] June 16, 2022, no pet.) (mem. op.), to support her contention that the County did not conclusively establish that the emergency-exception applies. In *Rivera*, a police officer was driving to pick up

11

her partner from the police station. *Id.* While driving, she heard a dispatch about a priority-two call, which is an emergency call officers respond to within five minutes. *Id.* The officer did not respond to the call. *Id.* Instead, she continued toward the police station to pick up her partner and intended to "check by" the priority call afterward. *Id.* at 10. Another driver hit the police officer's car as the police officer drove through a red light on her way to the police station. *Id.* We held that the summary-judgment evidence raised a fact issue whether the facts constitute an emergency under section 101.005(2). *Id.* at 11. At the time of the collision, the officer was farther away from the priority-call than standard response times dictated, and she planned to make a stop en route. *Id.* The officer was typing on her computer and did not realize that she had a red light as she entered the intersection. *Id.* at 8. We held that the summary-judgment evidence did not conclusively establish that a reasonably prudent officer in the same situation could have believed the need to which the officer was responding outweighed the risks associated with the officer's actions. *Id.* The summary-judgment evidence did not address the risks involved in entering an intersection unaware of the color of the traffic light, nor alternative actions the officer could have taken, such as pausing typing or slowing down to look up and check the light's color. *Id.* Therefore, we concluded that the trial court erred in granting summary judgment for the City. *Id.*

12

Deputy Sutton's situation is distinguishable because the summary-judgment evidence shows that he was aware of and responded to the risks of the emergency pursuit. Unlike the officer in *Rivera*, who was unaware that she was driving through a red light because she did not look up at the light, Deputy Sutton responded to conditions of the road, navigated among existing motorists, decreased his speed when necessary, and activated his lights and sirens. *See Rivera*, 2022 WL 2163025 at *8 (stating officer failed to determine whether light was red while distracted typing and did not slow to degree necessary to evaluate risks of proceeding through intersection). The record does not support a conclusion, like in *Rivera*, that Deputy Sutton, pursuing a suspect vehicle on the highway, failed to consider the risks and alternative actions available to him or failed to take actions to mitigate risks. *Id.* The record does not reflect that as Deputy Sutton pursued the suspect vehicle, he knew he was creating a risk of serious injury yet did not care what might happen to other motorists. *See Maspero*, 640 S.W.3d at 531 (internal quotations and citations omitted) (stating reckless driving includes conscious indifference, subjective awareness of extreme risk and showing that driver committed act he knew or should have known posed high degree of risk of serious injury).

Jones concedes that Deputy Sutton was responding to an emergency and because no evidence could support a finding that Deputy Sutton acted with

13

reckless disregard for the safety of others, the emergency exception applies. The TTCA does not waive the County's governmental immunity. TEX. CIV. PRAC. & REM. CODE§ 101.055(2).

## Conclusion

We reverse the trial court's judgment and render judgment dismissing Jones's claims against the County.



Peter Kelly
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.